# Exhibit 7

# PROFIT SHARING AGREEMENT

Between

## NORDIC ENERGY FZC

And

## ENERGY EXPLORATION & DEVELOPMENT CO. LTD.

For the joint operation of Saudi Aramco Contract number: 6600039722
Snubbing Services by Nordic Energy FZC and Energy Exploration & Development Company LTD




1

## Table of contents

ARTICLE 1. PROLOGUE

ARTICLE 2. WITNESSETH/RECITAL

ARTICLE 3. EQUIPMENT

ARTICLE 4. DEFINITIONS OF TERMS IN THIS AGREEMENT

ARTICLE 5. OBJECTIVE & SCOPE

ARTICLE 6. CONDUCT OF BUSINESS

ARTICLE 7. RIGHTS AND OBLIGATIONS

ARTICLE 8. FORCE MAJEURE

ARTICLE 9. REMUNERATION AND PAYMENT

ARTICLE 10. LIABILITIES AND INSURANCE

ARTICLE 11. DURATION AND TERMINATION

ARTICLE 12. CONFIDENTIALITY AND NON-DISCLOSURE

ARTICLE 13. PATENTS

ARTICLE 14. INVENTIONS

ARTICLE 15. GOVERNING LAW AND ARBITRATION

ARTICLE 16. GENERAL PROVISIONS





Nordic Energy FZC & ENEXD

## 1.0  PROLOGUE

This agreement, which includes appendix contents page and all appendices at the end after signatory page, (herein after referred to as the **AGREEMENT**) made, entered into and enacted/executed on this 19th Day of the month of December of the Gregorian Calendar Year 2017,

By and Between

**Nordic Energy FZC** (hereinafter called "**Nordic**"), a company incorporated under the laws of Ras Al Khaimah Free Zone Authority in United Arab Emirates with C.R No: 5001516 whose address is: PO Box 38094, Ras Al Khaimah, United Arab Emirates, with the Manager being Mr. Kjell Inge Sola of Norwegian nationality and passport number 31946876, authorised to sign and act on **Nordic's** behalf in conjunction with Chairman Mr. Walid Al Hashash. Appendix 1 holds a copy of latest trading licenses of **Nordic** for both in Dubai and Saudi Arabia (Saudi Arabia license is currently expired, but **Nordic** are to validate Saudi Arabia license at first opportunity). Appendix 2 shows latest passport copy of Mr Kjell Inge Sola. Appendix 3 shows **Nordic** Board of Directors Board Resolution for their acceptance and concurrence for entering into this agreement.

And

**ENERGY EXPLORATION & DEVELOPMENT CO. LTD.** (hereinafter called "**ENEXD**"), a company incorporated under the laws of DMCC Licensing Authority in United Arab Emirates with License No: DMCC-30261 whose address is: PO Box 114300, Jumeriah Lake Towers, United Arab Emirates, with Managing Director being Mrs Delaram Zavarei of St Kitts & Nevis nationality and passport number RE0029220. Appendix 4 holds a copy of latest trading license of **ENEXD**. Appendix 5 holds latest passport copy of Mrs Delaram Zavarei. Appendix 6 shows Mrs Delaram Zavarei is sole shareholder of ENEXD and therefore authorised to sign this agreement on behalf of **ENEXD**. **ENEXD** is a company registered in BVI with a branch in Dubai and upon finalising this contract will register a branch of their company in Saudi Arabia. If registration of **ENEXD**'s Saudi Arabia branch is complete before mobilisation of the equipment for the purposes under this agreement, **Nordic** will deal with **ENEXD** Saudi. However, if registration completes after mobilisation, **Nordic** will accept switching from dealing with **ENEXD** Dubai branch to **ENEXD** Saudi branch at that time.

Both parties warrant that they have the capacity to enter into this contract.

## 2.0  WITNESSETH/RECITAL

Whereas **Nordic**

Nordic is a qualified vendor to Saudi Aramco and has entered into a 3 year plus 1-year option Snubbing Services contract with Gulf Energy to fulfil the contract Gulf Energy holds with Saudi Aramco effective from April 2017 to April 2021. Appendix 7 shows contractual relationship between Nordic & Saudi Aramco for the aforementioned snubbing services (Nordic & Gulf Energy contract, and Gulf Energy & Saudi Aramco contract). To fulfil said

Nordic Energy FZC & ENEXD

3

contract requirements Nordic is obligated to deliver a portfolio of equipment items described in the Saudi Aramco contract document for the fulfilment of said contract. Nordic has therefore approached ENEXD to consider a cooperation as ENEXD has available equipment required for the fulfilment of the Saudi Aramco Contract.

And whereas **ENEXD**

Desire to provide **Nordic** with its equipment items necessary to fulfil the requirement described in the Saudi Aramco Contract document in consideration for a share of the profits from the contract between **Nordic** & **Gulf Energy**.

Now therefore, it is herein agreed between the parties, **Nordic** and **ENEXD** of and to this AGREEMENT as follows hereinafter:

3.0    Equipment

As aforementioned, equipments to be supplied to fulfil Saudi Aramco Contract No 6600039722 are as follows –

**To supply the following equipment items based on ENEXD's equipment portfolio:**

1. 2 each C-15 Power packs for snubbing unit
2. 6 each 460K Slip bowls
3. Snubbing unit Operators Panel
4. Rotary Husco with rotary control panel
5. Main winch and control panel for Gin Pole
6. Generators and distribution panels and lights
7. 13-5/8-inch 10K BOPs
8. 1502 Package 2" and 3"
9. Tongs / Inrock tongs
10. Fuel tank 15000L transfer pump Wilden
11. Mud system
12. 2 each mix hoppers
13. 2 each shakers
14. 3 each 100hp mud hogs
15. 5 each mud tanks 250BBL and trip tank
16. All Agitators
17. Other mud system related equipment such as diaphragm pumps/small centrifugal 30HP transfer pump etc.
18. Camp with Mess hall, laundry, 2 Rig Office containers and sewerage system
19. Any spare parts needed for modification of ENEXD existing equipment to be agreed upon in Appendix 9
20. All remaining spare parts used as required and paid for by this joint venture, costs to be split respective of their profit sharing percentage (Section 8).

1-18 full equipment list in full detail is in Appendix 8
Spare parts needed for modification in Appendix 9

Nordic Energy FZC & ENEXD

4

Delivery point where all responsibilities pass over to Nordic shall be the Nordic warehouse in Dubai.

Both parties agree that the above equipment is delivered to Nordic without warranty as seen and inspected by Nordic.

**To supply the following equipment items based on Nordic's equipment portfolio:**

1. 24,000 FT/lb Rotary
2. Cat Walk with ramp
3. Certified Structure for Snubbing unit
4. 50 ft. length & 20-ton capacity Gin Pole
5. Additional 3 Mud tanks with a capacity of 1,200 bbl.

1-5 full equipment list in full detail is in Appendix 10

**Equipment to be manufactured by Nordic and purchased by ENEXD**

1. 3 each Substructure, as per Nordic design and manufactured by Nordic
2. Rig Assist Unit Manufactured by Nordic

1-2 full equipment list in full detail is in Appendix 11 (including but not limited to specification, licence, warranty, drawings, time schedule)

**Equipment from other manufacturers to be purchased by ENEXD**

1. GD Mud pumps, new purchase, manufactured by MSI (manufacturer recommended by Nordic)
2. Snubbing Jacking System, manufactured by Depro (manufacturer recommended by Nordic)
3. Riser Spools and crossovers for BOP relevant to the job
4. DAS (Data Acquisition System) (manufacturer is Rig Smart, Canada)
5. Degasser flare off line
6. Gin Pole Winch's
7. Compressor to suit volume requirement to run the Rig

1-7 full equipment list in full detail is in Appendix 12 (including but not limited to specification, licence, warranty drawings, time schedule, contract/purchase order/rent proposal, terms of payment)

**Equipment from other manufacturers to be purchased by Nordic (with approval of ENEXD) through the joint account Operation under this agreement:**

1. Additional required Riser Spools and crossovers for BOP relevant to the job
2. BOP Closing Unit with 9 Station

Nordic Energy FZC & ENEXD

5

1-2 full equipment list in full detail is in Appendix 13 (including but not limited to specification, licence, warranty drawings, time schedule, contract/purchase order/rent proposal, terms of payment)

Throughout the term of this contract, if either party decides additional equipment is required, once written permission is granted from the other party, this additional equipment will be funded from joint operation cost of operations.

If the joint operation decide that equipment needs to be rented during the term of this contract, and one party has the opportunity to buy the equipment, that party will hold priority to rent equipment to joint operation at the lowest documented market price.

## 4.0 DEFINITIONS OF TERMS IN THIS AGREEMENT

These shall be applicable to the entire Agreement including the Prologue & Recital and are as follows –

### 4.1 Operations

Appendix 14 shows the workforce structure of operations and management of this joint venture and snubbing service operations. ENEXD must be part of the Nordic reporting operation and will receive all the reports for maintenance, purchase, operation and every other report related to this project.

### 4.2 Territory

This shall mean the Kingdom of Saudi

### 4.3 Clients

This shall mean Saudi Aramco through contractual relationship as shown in Appendix 7

## 5.0 OBJECTIVE & SCOPE

5.1   The Objective of this Agreement is for **ENEXD** to work with and to provide equipment items to **Nordic** for the fulfilment of the Saudi Aramco Contract.

5.2   The Scope of this Agreement includes supply of equipment items as per article 3.1 from **ENEXD to Nordic**.

5.3   **ENEXD** shall be entitled at any time to add or replace any constituent of equipment in support of the Objective provided that it so advises **Nordic** at least 60 days in advance by registered mail to the address for notices (Article 13.4 of General Provisions) specifying the effective date of the change made to Article

Nordic Energy FZC & ENEXD

## 6.0 CONDUCT OF BUSINESS

6.1 This Agreement is based on a clear understanding that **ENEXD** shall assign **Nordic** as sole and exclusive provider of the snubbing services relating to Saudi Aramco Contract number: 6600039722 to Saudi Aramco. **Nordic** and **ENEXD** shall agree on the financial terms as set out herein this Agreement.

6.2 **Nordic** shall act as a liaison with Saudi Aramco and Gulf Energy for **ENEXD** under this Agreement. Each party shall not have any right or power hereunder to act for or to bind for the other party in any respect or to pledge its credit without its prior written permission.

6.3 **Nordic** and **ENEXD** shall comply with all legal requirements within the Territory that are in force related to the usage of equipment within the scope of this Agreement.

## 7.0 RIGHTS AND OBLIGATIONS

7.1 **ENEXD** shall provide **Nordic** with the support necessary for the conduct of business activities under this agreement in the Territory including mutually financial support at outset of this agreement for purchasing and upgrading equipment (as described in Section 3) as well as managerial support as requested.

7.2 **ENEXD** shall not market its products and services for term of this contract to Saudi Aramco for hydraulic snubbing services in the Kingdom of Saudi. The parties shall clearly identify each other's products and services in marketing material, publications and press releases where the other party's products or services are represented.

7.3 **ENEXD** shall have sole ownership to all equipment as defined in Article 3.1 provided they are supplied by them or purchased by them.

7.4 Invoicing to Clients shall be done by **Nordic** through its agent Gulf Energy. **ENEXD** shall receive copies of such commercial Invoices immediately after they are issued to Client.

7.5 **Nordic** shall not have the right to use any (part or whole) of the equipment owned by **ENEXD** except for fulfilling duties of snubbing services under this contract unless written permission is obtained beforehand.

7.6 **Nordic** accept and confirm to keep all **ENEXD** logos, tags and ID numbers on **ENEXD** equipment. No one has the right to tamper with, cover or remove any of the aforementioned. **Nordic** do have the right to, at their own cost, affix their removable logos or ID tags as long as they are removed after term of this contract.

7.7 Both authorised persons are to sign off on full equipment list before delivery to forwarder.

Nordic Energy FZC & ENEXD

7

7.8 It is **Nordic's** responsibility to obtain any permit necessary to import equipment to the Territory. With the option that once the ENEXD Saudi branch has been established, **Nordic** will transfer import documents to **ENEXD**.

7.9 Nordic has 14 days from date of notice of demobilisation/termination of any agreement (meaning any of agreements between a) Saudi Aramco & Gulf Energy, b) Nordic & Gulf Energy and this agreement all to fulfil Saudi Aramco Contract No 6600039722) to submit documents required to obtain any permit necessary to export equipment out of the Territory, unless subject to 6.8, **Nordic** have already transferred documents to **ENEXD**, in which case it will be **ENEXD** responsibility.

7.10 **Nordic & ENEXD** accept that both a Nordic and ENEXD representative will every 6 months (from the start of operations) check inventory list against the inventory of equipment supplied under this agreement to fulfil Saudi Aramco contract. Any damages or anomalies to equipment not caused by normal operational wear and tear, **Nordic** will be responsible to rectify these at their own cost.

7.11 It is **Nordic's** responsibility to obtain for any initial certifications required for operations of snubbing services. During the operational period, all certifications required for equipment of operations shall always remain valid and be renewed throughout, the cost of this will be bared as cost of operations.

7.12 **Nordic** will add **ENEXD** or its authorised person on as a third signatory to the bank account held by Gulf Energy & Nordic in the Territory – based on Appendix 1 OF THE gulf Energy & Nordic contract. **ENEXD** or its authorised person will be kept on as a signatory to this aforementioned account for the duration of the term of this agreement. None of the three parties to this account shall be entitled to withdraw cash without the consent and signature of the other parties.

7.13 **Nordic & ENEXD,** or their authorised persons, must open a joint bank account in Dubai within 30 days of finalising of this contract, for the duration of the term of this agreement (until ENEXD Saudi branch is established, when **Nordic** and **ENEXD** must open up a joint account in Kingdom of Saudi to fulfil this purpose), and **Nordic** must ensure that all payments for mobilisation, demobilisation and any other payments will be deposited into this account. Based on section 8, each party will then take their owed payments from this joint account, and any expenses required under this agreement will be paid from this joint account also. Neither of the two parties to this account shall be entitled to withdraw cash without the consent and signature of the other parties.

7.14 When a representative from **ENEXD** wishes to visit the well site, **Nordic** shall to their best endeavour, ascertain to obtain any relevant passes/visas/permissions in a reasonable time.

7.15 No rights under the contract can be assigned or transferred without the prior written consent of the other party.

Nordic Energy FZC & ENEXD

8

7.16   **ENEXD** will have the full right to the yearly audit reports of **Nordic** regarding this project.

7.17   **Nordic** or **Gulf Energy** should not be permitted to amend the terms of the contract between **Nordic & Gulf Energy** or the contract between **Gulf Energy & Saudi Aramco** regarding fulfilment of Saudi Aramco Contract No 6600039722 without the prior written approval of **ENEXD**.

## 8.0   FORCE MAJEURE

8.1   A party may be relieved from any obligation hereunder if and to the extent it can prove that performance of such obligation is reasonably impossible due to Force Majeure. Force Majeure shall mean any cause beyond the reasonable control of the party affected that could not be evaded through the exercise of due care, that stops the party from fulfilling its obligations and conditions as under this contract for example, but not limited to war, floods and natural disasters.

8.2   A party affected by Force Majeure shall give the other party immediate written notice thereof as well as its expected consequences in relation to this Agreement.

8.3   Except as otherwise provided for in this Agreement each party shall bear its own costs resulting from Force Majeure. The parties shall, however, co-operate to mitigate losses or other negative effects attributable to Force Majeure. Furthermore, the parties shall do their outmost to safeguard property and interests of the parties, which may be in jeopardy during a Force Majeure situation, and they shall reimburse one another for expenses directly incurred for such purposes.

8.4   Subject to the above, in the event of Force Majeure **Nordic** and **ENEXD** shall (if appropriate) mutually seek to agree on a revised Agreement schedule and/or other consequential changes to this Agreement.

## 9.0   REMUNERATION AND PAYMENT

9.1   Remuneration in form of sharing of profits from conduct of business under this agreement to fulfil Saudi Aramco contract number 6600039722 within Territory shall be as follows:

A) ENEXD or their authorised person are added as third signatory onto first joint account Nordic hold with Gulf Energy
B) From Aramco payment, 6% is paid to Gulf Energy from the joint account Nordic hold with Gulf Energy. Remaining 94% then is transferred within 2 bank working days to ENEXD & Nordic joint account.
C) From this second joint account and the amount deposited in, Nordic take their 3% management fee and 1.5% will be left for any joint venture expenses.
D) Operational expenses are to be deducted from this amount (using agreed forecast financial statements – Appendix 15)

Nordic Energy FZC & ENEXD

E) This final amount after the management fee and expenses will then be split between Nordic & ENEXD, 40/60 respectively. Mobilisation and Demobilisation will also follow the same respective patterns as above.

9.2 Parties take their agreed amounts monthly. The accounts should be balanced quarterly respective to their percentage share.

9.3 Both parties will meet quarterly to decide whether the percentage kept for expenses is sufficient and balance amounts, if not, this can be amended by a document signed by both parties and added as an appendix to this agreement.

9.4 At end of term of this agreement, any remaining monies in account held for expenses will also be divided between **Nordic** & **ENEXD**, 40/60 respectively.

9.5 Any additional mutually agreed upon expense will be split between **Nordic & ENEXD**, 40/60 respectively.

## 10.0   LIABILITIES AND INSURANCE

10.1 **ENEXD** warrants that it has all proprietary rights to the Technology, Products and Services and is Competent to make this Agreement, and will indemnify and keep **Nordic** Harmless from any claim of any kind or infringement of property rights of any Kind and arising anywhere in connection with the use of the Technology, products and services and supply of other constituents of Technology

10.2 **Nordic** shall be fully responsible for its use and operation of the Equipment and Services and shall accept all liabilities related to the functioning of the aforementioned Services under this agreement.

10.3 As **Nordic** are in charge of operations, they shall indemnify and keep **ENEXD** harmless from any loss, damage, injury or claim from any third party in connection with operation, use or sublease of the equipment including but not limited to loss of or damage to hole or equipment.

10.4 As **Nordic** are in charge of operations, they shall be responsible for and shall defend, indemnify and hold **ENEXD** harmless from and against its own special, indirect, punitive or consequential damages including, without limitations, loss of profit or business interruptions or loss of use of assets except where the same is directly or indirectly attributable to gross misconduct.

10.5 Both parties agree to finalise insurance requirements a maximum of 30 days after signing of this agreement with all insurance policies in Appendix 16. Insurance to cover, but not be limited to, transportation of equipment, holding of equipment when not at well site. Saudi Aramco to cover insurance of equipment at well site. **ENEXD** are to be named the beneficiary of their equipment in all insurance documentation. **ENEXD** are to agree on insurance amount to cover their equipment.

Nordic Energy FZC & ENEXD



10

10.6   The Parties agree that the Contracts (Rights of Third Parties) Act 1999 shall apply to the Agreement only to the extent that any member of **ENEXD Group** or **Nordic Group** (excluding **ENEXD** and **Nordic**) who has been granted an express benefit in terms of the Agreement shall be entitled in its own right to enforce the benefit of the indemnities given to it pursuant to this Agreement.

**11.0   DURATION AND TERMINATION**

11.1   This Agreement shall continue in full force and effect from the day signed and to term of the Saudi Aramco contract duration, as well as 90 days after to settle final amounts.

Neither party can cancel or terminate this agreement if the other party is fulfilling their obligations and conditions under this contract.

However, either party will automatically hold the optional right to terminate the Agreement in the event that:

a)   the other party enters a situation of Force Majeure which has lasted for a consecutive period of ninety (90) calendar days in the Territory, or

b)   the other party becomes bankrupt or insolvent, or if its business is placed in the hands of an administrator, a receiver, assignee, or trustee, whether by voluntary act of the other Party or otherwise, or undergoes any proceeding analogous to the following.

c)   Finally, either party may terminate the Agreement if the other party is in material breach in form of non-performance of any of its obligations or violates any of terms and conditions under this Agreement and the breaching party has not rectified the breach within 60 days after receiving written notice by the non-breaching party.
Excepted are instances with the prior written permission of the other party.

d)   By mutual consent

Termination of this agreement shall not relieve either party of its obligations incurred prior to Termination including any outstanding payments.

Notice to terminate this agreement must be exercised within 14 days of any situations a-c above if the party wishes to terminate the agreement.

11.2   Change of ownership of either party will not be cause for early termination of contract. If either party is to change ownership, notice must be given to the other party 30 days before signing of the transaction. It is then the responsibility of the current owner to inform the new owner of this agreement and that they are also bound by this agreement for the full term.

Nordic Energy FZC & ENEXD

11

11.3   Both parties are bound by this agreement for its full term, or must be financially compensated for loss of its profit for its early termination by the other party.

## 12.0  CONFIDENTIALITY AND NON-DISCLOSURE

12.1   In connection with this Agreement, **Nordic** may deliver to **ENEXD** certain specifications, plans, drawings and other Information (the "Information") related to Technology, Products and Services that **Nordic** or its affiliates have developed or designed. The Information contains trade secrets and other confidential Information that **Nordic** has developed at great cost in its business. **Nordic** may find it necessary to disclose the Information to **ENEXD** so that **ENEXD** can perform work under the Agreement. **Nordic** is willing to disclose the Information to **ENEXD** only upon the condition that all Information given to **ENEXD** by **Nordic**, or made accessible to **ENEXD** for this or any other purpose, will be kept confidential by **ENEXD**, its officers, agents, sub-contractors and employees on the basis set out in this Agreement.

12.2   **ENEXD** acknowledges that the Information is being disclosed to **ENEXD** for its benefit and would not be disclosed except for the performance of work under this Agreement. **ENEXD** therefore agrees to treat as confidential all of the Information, whether written, oral or observed, which has been or hereafter may be, obtained by, given to, made available to, come to the attention of or otherwise communicated to **ENEXD**, its sub-contractors or agents, or the employees, officers or directors of any of the foregoing as a part of or following from arrangements referred to in this Agreement, or disclosed to **ENEXD** at any future time because of the performance of work under this Agreement. **ENEXD** agrees to treat all of the Information as trade secrets and confidential Information and not to disclose, use, make available, transmit or otherwise publish or communicate any of the Information, however obtained, or attempt to do any such thing, to any third party or to use or attempt to use any Information, process, material or technique for **ENEXD**'s own purposes without **Nordic**'s prior written consent, which consent may be withheld without reason.

12.3   **ENEXD** further agrees to take all reasonable measures to preserve the security and confidentiality of the Information and to ensure that no improper or unauthorised disclosure occurs.

12.4   **ENEXD** agrees that all notes, memoranda, designs and other written documentation forming part of or otherwise comprising the Information or which becomes available to **ENEXD** or is created in connection therewith (including all copies of any such things), shall be and remain, or otherwise become **ENEXD**'s property and **ENEXD** undertakes to hand the same over to **Nordic** upon demand made by **Nordic** or its authorised agents at any time and from time to time.

12.5   Also all other Information exchanged between the parties shall be treated as confidential and shall not be disclosed to a third party without the other party's written consent. Each of the parties may, however, use or disclose such Information:

Nordic Energy FZC & ENEXD

12

    a) for the purpose of development and performance of the work under this Agreement, or

    b) to any authorities lawfully requesting such Information, or

    c) to the extent that such Information is generally available to the public.

12.6    **ENEXD** shall not publish the Information or other Information, or refer any

12.7    **ENEXD** or any parent, affiliate or subsidiary in existence as of the date of this Agreement (but excluding any companies acquired by **ENEXD** subsequent to the date of this Agreement) shall not market, represent or in any other way promote competing technology within the territory during the duration of the Agreement.

    The provisions of this Article 14.0 shall be a continuing obligation and shall survive the cancellation or termination of this Agreement for two (2) years.

12.8    **ENEXD** will not be bound by any of 11.1 – 11.7 for any information/documentation received from **Nordic** related to the upgrades of **ENEXD** equipment by **Nordic** or **Nordic** manufactured equipment purchased by **ENEXD**.

## 13.0    PATENTS

13.1    **Nordic** agrees to indemnify, defend and hold **ENEXD** harmless from and against any and all losses, costs, damages, injuries, liabilities and claims (collectively, Losses) for any intellectual property violations resulting directly or indirectly from **Nordic**'s future performance of any work, including the provision of material, processes, services, products and designs by **Nordic**, and the use of tools and other equipment made by or provided by **Nordic** in any connection therewith, and shall reimburse immediately on similar terms and conditions (time interval and form of currency) **ENEXD** fully for any Losses, royalties, damages, costs (including reasonable attorney's fees) or other payments that **ENEXD** shall be obligated to pay. Neither party shall be responsible to the other party for indirect or consequential damages arising out of this Agreement.

    **Nordic** shall have the right to be represented by counsel at all times during litigation and/or other discussions relating to claims of intellectual property violations arising hereunder.

13.2    *PROCEDURE;* All claims for indemnification under this Agreement shall be asserted and resolved as follows:




Nordic Energy FZC & ENEXD

13

a) **Nordic** shall promptly give **ENEXD** notice of any matter which **Nordic** has determined has given or could give rise to a right of indemnification under this Agreement, stating the amount of the Losses, if known, and method of computation thereof, all with reasonable particularity, and stating with particularity the nature of such matter. Failure to provide such notice shall not affect the right of **Nordic** to indemnification except to the extent such failure shall have resulted in liability to **ENEXD** that could have been actually avoided had such notice been provided within such required time period.

b) The obligations and liabilities of **Nordic** under this Agreement with respect to Losses arising from claims of any person (Claims) shall be governed by and contingent upon the following additional terms and conditions: if **Nordic** shall receive notice of any Claim, **Nordic** shall give **ENEXD** prompt notice of such Claim and **ENEXD** may, at its option, assume and control the defence of such Claim at **ENEXD**'s expense and through counsel of **ENEXD**'s choice reasonably acceptable to **ENEXD**. In the event **ENEXD** assumes the defence against any such Claim as provided above, **ENEXD** shall have the right to participate in the defence of such asserted liability, shall co-operate with **Nordic** in such defence and will attempt to make available on a reasonable basis to **Nordic** all witnesses, pertinent records, materials and Information in its possession or under its control relating thereto as is reasonably required by **ENEXD**. In the event **ENEXD** does not elect to conduct the defence against any such Claim, **ENEXD** shall pay all reasonable costs and expenses of such defence as incurred and shall co-operate with **Nordic** (and be entitled to participate) in such defence and attempt to make available to it on a reasonable basis all such witnesses, records, materials and Information in its possession or under its control relating thereto as is reasonably required by **ENEXD**.

**Nordic** does not warrant that such equipment:

a) will not infringe any such patent when not of **Nordic**'s manufacture, or

b) if used or sold in combination with other materials or apparatus or used in the practice of processes without **Nordic**'s prior knowledge or consent, and

c) **Nordic** shall not be liable and does not indemnify **ENEXD** for damages or loss of any nature whatsoever resulting from actual or alleged patent infringement, arising pursuant to condition (a) or (b) above.

## 14.0   INVENTIONS

14.1   Disclosure of inventions or technology –




Nordic Energy FZC & ENEXD

14

ENEXD shall disclose to **Nordic** inventions or the development of new technology, which it may make in connection with this Agreement and which are based on or derived from information provided by **Nordic**.

All rights, title and interest in, and to, such inventions and/or technology shall to the extent permitted by law, belong to **Nordic** and its permitted assigns

However, **Nordic** shall reimburse **ENEXD** for all the costs incurred for such inventions.

**ENEXD** also agrees to execute all documents and to perform or have performed all such other acts as are necessary to perfect **Nordic**'s title and its permitted assign's title, to such inventions and/or technology provided, however, that **Nordic** shall reimburse **ENEXD** for all reasonable expenses incurred, including compensation which any employee of **ENEXD** may be entitled to, pursuant to the applicable laws in connection therewith.

## 15.0 GOVERNING LAW AND ARBITRATION

This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the law of England and Wales.

The Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be referred to and finally resolved by arbitration under the LCIA Rules, which are deemed to be incorporated by reference into this Clause. The number of arbitrators shall be one. The seat, or legal place, of arbitration shall be LCIA, in London, United Kingdom. The language to be used in the arbitral proceedings shall be English.

## 16.0 GENERAL PROVISIONS

### 16.1 Amendments

No alteration or amendment of this Agreement and/or appendixes shall take effect unless the same is duly executed in writing and signed by each of the parties/authorised persons hereto.

### 16.2 Further Assurances

The parties covenant and agree to execute such further and other documents and instruments and to do such further and other things as may be necessary to implement and carry out the terms of this Agreement.

### 16.3 Waiver

No provision of this Agreement shall be deemed to be waived unless such waiver is in writing. Any waiver of any default committed by any of the parties hereto in

Nordic Energy FZC & ENEXD





15

the observance or the performance of any part of this Agreement shall not extend to or be taken in any manner to affect any other default.

### 16.4 Notices

Whether or not so stipulated in this Agreement, delivery of all notices and communications (hereinafter called "Notice") required or permitted under this Agreement shall be in writing. Notices shall be validly given if received by recorded delivery post, delivered by hand and/or by courier to the addresses of the Parties stated below or to an address subsequently notified in writing by one Party to the other Party:

1) **ENERGY EXPLORATION & DEVELOPMENT CO. LTD.**

   PO Box 114300
   27C, AU Gold Tower, Jumeriah Lake Towers, Dubai, United Arab Emirates

2) **NORDIC ENERGY FZC**

   PO Box 93086
   27C, AU Gold Tower, Jumeriah Lake Towers, Dubai, United Arab Emirates

Both parties may change its delivery address for a Notice herein or number for the sending of a facsimile copy by giving to the other party hereto Notice in writing to that effect as herein provided.

### 16.5 Authorised Persons

Each party will put forward one authorised person, who will have the authority to undertake decisions on behalf of party, for example (and not limited to) to deem additional equipment expense necessary. This authorised person will be noted in Appendix 17 (for **Nordic**) and Appendix 18 (for **ENEXD**). The Appendix will show their full name, email address, telephone number, contact address and passport copy. Each party has the right to change their authorised person by notice to the other party 30 days in advance with the same information as required to add on to the appendix.

### 16.6 Successors and Assigns

This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.

### 16.7 Severability

Any provision hereof which is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or non-enforceability without invalidating the remaining provisions hereof, and any such prohibition or non-enforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction and the parties undertake to renegotiate




Nordic Energy FZC & ENEXD

16

in good faith with a view to concluding arrangements as nearly as possible the same as those herein contained.

16.8  **Entire Agreement**

This Agreement (including Appendixes) and the Orders contain the whole agreement between the parties hereto with respect to the matters herein provided for and there are no representations, warranties covenants, duties or collateral agreements between the parties in connection therewith other than as expressly provided for herein.

16.9  **Official language**

The version of this Agreement in the English language will govern the rights and obligations of the parties in respect of the subject matter of this Agreement.
IN WITNESS HEREOF the parties hereto have executed this Agreement the day and year first above written.

**ENERGY EXPLORATION & DEVELOPMENT CO. LTD.**     **NORDIC ENERGY FZC**


_____

Authorised Signatory & Company Stamp:


_____
Managing Director & CEO
Authorised Signatory & Company Stamp:

Nordic Energy FZC & ENEXD

17

## Appendix List

1. Copy of latest trading licence of Nordic with authorized signatures.
2. Copy of passport of Mr. Kjell Inge Sola
3. Copy of Nordic Board of Directors Board Resolution
4. Copy of latest trading licence of ENEXD
5. Copy of passport of Mrs Delaram Zavarei
6. Proof showing authorised to sign agreement on behalf of ENEXD
7a. Nordic & Gulf Energy Agent Agreement
7b. Gulf Energy & Saudi Aramco Contract
7c. Nordic & Gulf Energy Back to Back Agreement for Saudi Aramco contract no: 6600039722
8. Miscellaneous parts list
9. ENEXD Equipment Full Detail
10. Nordic Equipment Full Detail
11. Full detail list of equipment manufactured by Nordic to be purchased by ENEXD
12. Equipment from other manufacturers to be purchased by ENEXD
13. Equipment to be leased by Joint Venture
14. Workforce structure chart
15. Agreed Projected Financial Statements
16. Finalised insurance policies
17. Nordic authorised person
18. ENEXD authorised person



Nordic Energy FZC & ENEXD

18