**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: APPLICATION TO OBTAIN DISCOVERY FROM FIVE BANKS FOR USE IN INTERNATIONAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 **)** **)** **)** **)** **)** **)** **)** **)** | Case No. 25-mc-414 (AS) |

**KUVEYT TÜRK KATILIM BANKASI A.Ş.'S**
**<u>MOTION TO INTERVENE</u>**

Steven T. Cottreau
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, DC 20001
(202) 879-3939

Fahad A. Habib (*pro hac vice forthcoming*)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Counsel for Kuveyt Türk Katılım Bankası A.Ş.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .........................................................................................................1

BACKGROUND ..........................................................................................................1

    A.    Kuveyt Türk ...............................................................................1

    B.    ENEXD ......................................................................................2

    C.    ENEXD's Application ...............................................................2

    D.    Alleged Role of Turkish Banks .................................................4

    E.    Breadth of Subpoenas ...............................................................6

    F.    Court Order ................................................................................7

    G.    Subpoena Service ......................................................................7

ARGUMENT ...............................................................................................................8

    I.    KUVEYT TÜRK HAS A RIGHT TO INTERVENE UNDER RULE 24(A) ...........................................................................9

    A.    Kuveyt Türk's Motion Is Timely ..............................................9

    B.    Kuveyt Türk's Interest in Protecting Confidential Financial Information Is Impaired by the Application ............11

    C.    Kuveyt Türk's Interest Is Not Adequately Protected by the Parties to this Case ............................................................12

    II.    THE COURT SHOULD GRANT KUVEYT TÜRK PERMISSION TO INTERVENE UNDER RULE 24(B) ..................13

CONCLUSION ..........................................................................................................14

i

# TABLE OF AUTHORITIES

**Page**

CASES

*335-7 LLC v. City of New York*,
  2020 WL 3100085 (S.D.N.Y. June 11, 2020) ......................................................14

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
  262 F.R.D. 348 (2009) ..........................................................................................9

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
  206 F.R.D. 78 (S.D.N.Y. 2002) ...........................................................................11

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................................9

*Hum. Servs. Council of N.Y. v. City of New York*,
  2022 WL 4585815 (S.D.N.Y. Sept. 29, 2022) .............................................13, 14

*In re Hornbeam Corp.*,
  2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ....................................10, 12, 13

*In re Martinez*,
  736 F. Supp. 3d 1189 (S.D. Fla. 2024) ...............................................................12

*In re Republic of Türkiye*,
  2025 WL 2200159 (S.D.N.Y. Aug. 1, 2025).......................................................11

*KGK Jewelry v. ESDNetwork*,
  2014 WL 1199326 (S.D.N.Y. Mar. 21, 2014)......................................................11

*Louis Berger Grp., Inc. v. State Bank of India*,
  802 F. Supp. 2d 482 (S.D.N.Y. 2011) .................................................................13

*New York v. HHS*,
  2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019)........................................................14

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
  467 F.3d 238 (2d Cir. 2006) ..................................................................9

*Silverstone Holding Grp. v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt.
  Co.*,
  650 F. Supp. 3d 199 (S.D.N.Y. 2023) ..................................................11

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ......................................................................9

**STATUTES**

28 U.S.C. § 1782 ..................................................................2, 5, 10, 11

**RULES**

Fed. R. Civ. P. 24(a)..............................................................................8, 9

Fed. R. Civ. P. 24(b) .............................................................................8, 13

**INTRODUCTION**

Two weeks ago, Kuveyt Türk Katılım Bankası A.Ş. ("Kuveyt Türk") learned that its five correspondent banks in the United States had been subpoenaed for almost eight years of its bank account records.  This Court had granted Energy Exploration and Development Limited's ("ENEXD") *ex parte* application to serve those subpoenas in aid of a claimed forthcoming proceeding in the United Kingdom.  In ENEXD's application, the sole basis for this discovery into Kuveyt Türk's financial affairs (and those of its bank customers) was a single transaction that Kuveyt Türk had supposedly conducted for Iranian entities.  But that transaction never occurred, as the attached declaration confirms.

The subpoenaed banks have not challenged the discovery order.  Kuveyt Türk's privacy interests in its financial information have thus gone unprotected—and the false information filed with this Court unchallenged.  Kuveyt Türk should therefore be permitted to intervene to challenge the subpoenas and ask the Court to grant appropriate relief, including withdrawing the Court's order authorizing the subpoenas.[1]

---

[1] For purposes of this motion and participation in this action, Kuveyt Türk makes a limited appearance and does not submit to in personam jurisdiction.  *In re Gaming Lottery Secs. Litig.*, 2000 WL 1801840 (S.D.N.Y. Dec. 7, 2000).

1

## BACKGROUND

### A.   Kuveyt Türk

Kuveyt Türk is one of the largest banks in Turkey.  It provides retail and corporate banking services to more than 8 million customers across more than 450 branches and 15 regional offices.  Kuveyt Türk maintains correspondent bank accounts with Citibank and other US financial institutions to facilitate foreign currency exchanges involving US dollars, process US dollar transfers for its customers, and perform Treasury activities like repayment of its bondholders.  It has never been found by any court or agency, including the US Treasury Department's Office of Foreign Assets Control ("OFAC"), to have improper ties to Iran.

### B.   ENEXD

As applicants tell it, ENEXD is a company that participates in "the onshore and offshore oil industry."  Wong Decl. ¶ 8, ECF No. 3.  It is incorporated in the United Arab Emirates and registered in the British Virgin Islands.  *Id.*  Its "ultimate beneficial owner" is Ms. Delaram Zavarei, whose "husband and business partner" is Mr. Reza Mostafavi Tabatabaei.  *Id.* ¶ 28.

### C.   ENEXD's Application

On September 22, 2025, ENEXD applied to this Court under 28 U.S.C. § 1782 for an *ex parte* order to take discovery from five US banks.  Mot., ECF No. 1.  To support its application, it filed a declaration of an English solicitor, Josh Wong, and

2

attached to that declaration a variety of exhibits, including putative transaction records.  *See* Wong Decl.

ENEXD alleged a vast conspiracy arranged by Iran as revenge (a "conspiratorial vendetta") against ENEXD's principals, especially Mr. Tabatabaei. *Id.* ¶ 39.  Plaintiffs note the purported involvement of Iranian entities, including the National Iranian Oil Company ("NIOC"), an Iranian state-owned entity in the oil and gas sector; NIOC International Affairs (London) Limited ("NIOC International"), an Iranian state-owned entity controlled by NIOC; and another Iranian-owned entity and NIOC subsidiary, Iranian Offshore Engineering and Construction Company ("IOEC").

In 2016, IOEC brought civil proceedings in the United Kingdom against Mr. Tabatabaei with "respect to the failed purchase of a rig [that] Mr Tabatabaei was involved in."  Wong Decl. ¶ 30; *see* 2019 English High Court Op. ¶ 67, Dkt. 20-1 (Exhibit A to Cottreau Decl.).  As ENEXD describes the proceedings, the High Court "found against Mr Tabatabaei in respect to some of the claims," and the "Iranian Regime" then "targeted Ms Zavarei's personal assets as well as those of Mr Tabatabaei in its attempts to allegedly recover its losses from the failed purchase." Wong Decl. ¶¶ 31-32.

ENEXD's counsel blithely characterizes the result of the High Court of Justice of England and Wales proceeding as the court ultimately "f[inding] against Mr.

3

Tabatabaei in respect to some of the claims." *Id.* ¶ 31.  In actuality, Mr. Tabatabaei was found liable by the High Court "for the approximately US$87 million which IOEC lost as a result of the conspiracy and the use of unlawful means" to defraud it, and was found to have "deliberately lied about the nature of his involvement" during the proceeding.  2019 English High Court Op. ¶¶ 121, 174, Dkt. 20-1 (Exhibit A to Cottreau Decl.); *see id.* ¶¶ 135, 163.

ENEXD asserts that Iran then "enlisted [] Kuwaiti Entities" in a widespread conspiracy to retaliate.  Wong Decl. ¶ 33.  As most relevant here, ENEXD alleges that Nordic Energy FZE ("Nordic") entered into a profit-sharing arrangement, whereby ENEXD would provide drilling equipment in exchange for a share of the project's profits.  *Id.* ¶ 7(a)(iii).  But, ENEXD now claims, that contract was not "a genuine commercial opportunity" but "a front contrived with" Iran "to deprive ENEXD of its assets," namely, the equipment.  *Id.* ¶ 36(a); *see id.* ¶ 11.

ENEXD claimed that Iran then paid the Kuwaiti entities to steal its equipment.  Mem. of Law 7; Wong Decl. ¶ 37.  ENEXD alleges that "Iran's state-owned entities" "used" two Turkish banks "to make payments to the Kuwait[i] Entities in furtherance of the conspiracy against ENEXD."  Mem. of Law 1-2.  ENEXD cites three putative financial transactions taking place in 2019 and 2023 through those banks.  *Id.* at 7-8.  These payments, ENEXD says, "were inducements from the Iranian Regime to

convince the Kuwaiti Entities to conspire against Ms Zavarei's company."  Wong Decl. ¶ 38.

### D.    Alleged Role of Turkish Banks

ENEXD claims that two Turkish banks were involved in Iran's transferring of funds as compensation for the scheme.  Only <u>one</u> of those payment transactions supposedly occurred through Kuveyt Türk.  ENEXD asserted that on February 14, 2023, "a payment of USD5,705,441.82 was made to Petrolem Gulf Energy Trading LLC and Energy House from NIOC (International) using an account held at Kuveyt Turk Katilim Bankasi."  Wong Decl. ¶ 37(e); *see also* Mem. of Law 8 ("NIOC International Affairs transferred a $5.7 million in USD to an account at Kuveyt Turk").  Because that transaction occurred in US dollars, ENEXD noted that the transaction necessarily "utilized the correspondent banking facilities of US bank(s)." *See id.* ¶¶ 40-41.

To show that Kuveyt Türk had conducted that transaction, ENEXD attached to its application a putative transaction record that appears on NIOC International Affairs letterhead.  Wong Exhibit 11, ECF No. 3-12 at p. 2 (dated February 14, 2023).  This "Telegraphic Transfer" (that is, wire transfer) record states that on February 14, 2023, $5,705,441.82 was transferred using Kuveyt Türk's "36063425" "Debit Account."  *Id.*  Another attachment to the Wong declaration reflects that

5

account 36063425 was Kuveyt Türk's correspondent banking account at Citibank N.A.  *See* Wong Exhibit 14, ECF No. 3-15 at p. 3.

The two other transactions at issue in the § 1782 application supposedly involved a separate Turkish Bank—Türkiye Finans Katılım Bankası A.Ş. ("Türk Finans").  The first, ENEXD claims, occurred on March 12, 2019, when "payment of USD3,380,800.00 was made to Mapna Kish Drilling Co. (Nordic Co.) by NIOC (International)/IOOC using an account held at Turkiye Finans Katilim Bankasi."  Wong Decl. ¶ 37(d).  ENEXD attached to its application a supposed "Telegraphic Transfer" record.  Wong Exhibit 9, ECF No. 3-10 at p. 2 (dated March 12, 2019).  That record states that on March 12, 2019, a transfer of $3,380,800.00 involved a "Debit Account" "ending 2744" in the name of "TURK FINANS."  *Id.*  But the account number given (ending in 2744) is not one of Türk Finans's US dollar accounts according to ENEXD's own exhibit.  *See* Wong Exhibit 15, ECF No. 3-16 at p. 2 (listing Türk Finans's accounts with none ending in 2744).

The second claimed Türk Finans transaction allegedly occurred on May 8, 2023, when "a payment of USD5,580,944.21 was made by NIOC (International) to Dar Al Aman Trading / Synfuels using an account held at Turkiye Finans Katilim Bankasi."  Wong Decl. ¶ 37(f).  A second purported "Telegraphic Transfer" record states that on May 8, 2023, $5,580,944.21 was debited from Türk Finans's account "ending 3214."  Wong Exhibit 12, ECF No. 3-13 at p. 5.  Another attachment to the

6

Wong declaration reflects that the account ending in 3214 was Türk Finans's correspondent banking account at JPMorgan Chase Bank. Wong Exhibit 15, ECF No. 3-16 at p. 2.

### E.    Breadth of Subpoenas

Based on these allegations of one transaction involving Kuveyt Türk, ENEXD sought a host of financial information, including bank account records for all five of Kuveyt Türk's US correspondent accounts for an eight-year period spanning from December 1, 2017 to the present. *See* Mem. of Law 9; Proposed Subpoena, ECF No. 2-1 at p. 6, 8-9.

ENEXD's requests were sweeping. For example, ENEXD sought documents identifying authorized users and documents concerning customer due diligence and assigned risk profiles. Proposed Subpoena, ECF No. 2-1 at p. 8-9. Moreover, ENEXD requested complete transaction-level records (including full payment messages), internal analyses and compliance notes, suspicious-activity monitoring outputs, records of rejected or blocked transactions, and communications with correspondent banks. *Id.* This information, ENEXD said, would be used for an ongoing proceeding to enforce an arbitration award in the United Arab Emirates and for a potential lawsuit in the United Kingdom. Mem. of Law 1.

## F.    Court Order

On October 1, 2025 (just over a week after the *ex parte* application was made), this Court granted the application. ECF No. 10. The application was never served on Kuveyt Türk and Kuveyt Türk did not know about the application before it was granted.

## G.    Subpoena Service

ENEXD then served subpoenas on correspondent banks requesting production of Kuveyt Türk's banking records. It did not serve notice of those subpoenas on Kuveyt Türk.

On October 20, 2025, Kuveyt Türk first learned of this action. Kuveyt Türk then retained Jones Day as US counsel in connection with this matter on October 28, 2025. Kuveyt Türk also promptly began investigating the applicant's claim that Kuveyt Türk had conducted a transaction on behalf of Iranian entities. As detailed in its motion challenging the subpoenas filed today, Kuveyt Türk discovered that the single transaction allegedly involving Kuveyt Türk never occurred and that the record purporting to show as much therefore had been falsified. Moreover, ENEXD and the people associated with it—Delaram Zavarei and her husband Reza Mostafavi Tabatabaei—have a history of fraud and of submitting falsified evidence to judicial tribunals. Mot. for Relief 18-20.

8

On October 31, 2025, Kuveyt Türk notified the court that it planned to challenge the sweeping subpoenas and the underlying order that had been granted based upon ENEXD's false evidence.  ECF No. 12.  Kuveyt Türk now seeks to intervene to bring that challenge and to seek other relief.

## ARGUMENT

Rule 24 allows persons to intervene in federal court proceedings that affect their interests—by right in some circumstances, Fed. R. Civ. P. 24(a), and with the court's permission in others, Fed. R. Civ. P. 24(b).  For both motions, as relevant here, courts consider "substantially the same" four factors: (1) whether the motion is timely, (2) whether the movant has an interest in the action, (3) whether that interest is "impaired by the disposition of the action," and (4) whether that interest is "not protected adequately by the parties to the action."  *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).  In assessing a motion to intervene, courts "accept as true the non-conclusory allegations of the motion."  *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 348, 352 (2009).

## I.    KUVEYT TÜRK HAS A RIGHT TO INTERVENE UNDER RULE 24(A).

"Intervention as of right … is granted" where, as here, all four factors are present.  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

9

A. **Kuveyt Türk's Motion Is Timely.**

To start, Kuveyt Türk's motion is timely.  Courts determining a motion's timeliness look at "the totality of the circumstances," and particularly, "(1) how long the applicant had notice of the interest" before moving to intervene; "(2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). Each consideration confirms timeliness here.

As for notice, Kuveyt Türk first learned of the underlying court order and application on October 20, 2025.  Since then, Kuveyt Türk retained undersigned counsel in connection with this matter, investigated the transaction alleged in the application, discovered that it never occurred, and prepared to challenge the subpoenas issued on its basis. Yazıcı Decl. ¶¶ 8-9, Dkt. 18.  Given how quickly Kuveyt Türk (a Turkish bank headquartered in Istanbul) has proceeded, there is "no dispute" that its intervention motion is timely. *In re Hornbeam Corp.*, 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015).

ENEXD will suffer little, if any, prejudice from any delay.  Nothing in its application suggests that ENEXD needs these documents imminently.  In describing the years-long proceedings in the United Arab Emirates, ENEXD makes no mention of how—let alone when—it will use the information.  Wong Decl. ¶¶ 24-27.  And

10

no UK proceedings have begun. *Id.* ¶¶ 47-48. ENEXD will not even "commence" that litigation until it takes "sufficient pre-action steps," only one of which "includ[es] gathering discovery" through the application. *Id.* ¶ 48. Moreover, this Court's Order itself contemplated allowing for some delay to consider "any objection that any of the banks may raise." ECF No. 10. ENEXD thus will not be prejudiced by letting one of the banks affected, Kuveyt Türk, be heard.

Kuveyt Türk (and its customers), in contrast, will face substantial prejudice if the court denies it intervention. The subpoenas would require its US correspondent banks to release years of its confidential financial information to litigants with a history of submitting fraudulent documents and making false statements to courts.

The circumstances surrounding this § 1782 application make intervention particularly warranted. As is often true for a § 1782 application, ENEXD's application was "made—and granted—on an *ex parte* basis," without an opportunity "to challenge the propriety of the discovery request before the court rules on it." *In re Republic of Türkiye*, 2025 WL 2200159, at *6 (S.D.N.Y. Aug. 1, 2025). To ensure this regime comports with due process, courts have regularly allowed persons to intervene to object to § 1782 orders affecting them. *Id.* (citing cases). That permission is especially appropriate here, where Kuveyt Türk, a non-party to the foreign litigation yet the subject of all the subpoenas, was never served with notice of the application, court order, or subpoenas. *See id.*

11

**B. Kuveyt Türk's Interest in Protecting Confidential Financial Information Is Impaired by the Application.**

The broad subpoenas here will impair Kuveyt Türk's interests in protecting its financial information. Courts often determine that persons "whose banking records are subpoenaed have a privacy interest in their personal financial affairs that gives them standing" to challenge "a subpoena served on a non-party financial institution." *Silverstone Holding Grp. v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) (alterations adopted); *see also, e.g.*, *KGK Jewelry v. ESDNetwork*, 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) (collecting cases); *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (similar). And they have "afforded the same protection to corporations." *Silverstone*, 650 F. Supp. 3d at 202.

The requested subpoenas trample upon Kuveyt Türk's recognized privacy interests. ENEXD conceded that the information it seeks is for "accounts held by Kuveyt T[ü]rk." Mem. of Law 17. Among the many documents it demands are monthly account statements and documents relating to "each account transaction, including, but not limited to, transaction details and payments messages in their entirety." Proposed Subpoena, ECF No. 2-1 at p. 8. In essence, ENEXD has commanded US banks to produce almost eight years of Kuveyt Türk's confidential US transaction history.

12

Here, compelled production would inevitably expose the identities and sensitive information of Kuveyt Türk's customers and their counterparties—none of whom are parties to this litigation.  Just as one example, monthly statements and full payment messages contain personally identifiable and commercially sensitive information, including account numbers, names and addresses.  Producing those records would intrude on the privacy and confidentiality interests of countless third parties.  This is especially prejudicial given the history of fraud perpetrated by ENEXD's principals.

C. **Kuveyt Türk's Interest Is Not Adequately Protected by the Parties to this Case.**

Finally, the parties to this case will not adequately protect Kuveyt Türk's interest in confidentiality.  So far, the "only existing party," ENEXD, is "adverse to" Kuveyt Türk.  *In re Hornbeam Corp.*, 2015 WL 13647606, at *3; *accord In re Martinez*, 736 F. Supp. 3d 1189, 1201 (S.D. Fla. 2024) (treating this factor as "easy" because "the only party to this § 1782 action would be the Applicants, who (it goes without saying) are not pursuing the 'same objectives' as [movants]").

Nor can the subpoenaed banks sufficiently protect Kuveyt Türk.  They lack the same confidentiality interest in Kuveyt Türk's own financial records.  Perhaps for that reason, none of "the recipients of the subpoenas have [ ] moved to quash them," and they "have not shown any interest in doing so." *In re Hornbeam Corp.*, 2015 WL 13647606, at *3.  Without the opportunity to intervene, then, Kuveyt Türk

13

is left defenseless against sweeping discovery into its financial records.  Under these circumstances, it is entitled to intervention.

## II.    THE COURT SHOULD GRANT KUVEYT TÜRK PERMISSION TO INTERVENE UNDER RULE 24(B).

For substantially the same reasons, the court should exercise its "broad discretion" to allow Kuveyt Türk to intervene.  *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011).  A court may permit intervention so long as the application is timely, there is "some interest on the part of the applicant," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."  *Id.*[2]  For all the reasons given above, each of those requirements is satisfied here.

Another consideration is whether the party "seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *335-7 LLC v. City of New York*, 2020 WL 3100085, at *3 (S.D.N.Y. June 11, 2020).  Kuveyt Türk is uniquely positioned to contribute to this adjudication.  As one of the two persons whose financial information is sought, it has a strong interest in the suit.  And it also has "firsthand knowledge" of its own financial records that enables it to

---

[2] The court need not find that existing representation is inadequate to grant permissive intervention. *See Hum. Servs. Council of N.Y. v. City of New York*, 2022 WL 4585815, at *4 (S.D.N.Y. Sept. 29, 2022) (collecting cases).

14

contest the factual premises upon which the application rests. *Hum. Servs. Council of N.Y. v. City of New York*, 2022 WL 4585815, at *5 (S.D.N.Y. Sept. 29, 2022); *see also New York v. HHS*, 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("the Court would benefit from concrete factual submissions from the Proposed Intervenors"). It can—and has—searched its own records to confirm that the single transaction linking Kuveyt Türk to the underlying dispute never happened. Yazıcı Decl. ¶¶ 8-9. Given Kuveyt Türk's special interest in this suit's outcome and its familiarity with the critical facts, this Court should permit Kuveyt Türk to intervene.

## CONCLUSION

For the foregoing reasons, Kuveyt Türk should be permitted to intervene.

Dated: November 6, 2025

Respectfully submitted,

*/s/ Steven T. Cottreau*

Steven T. Cottreau
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939

Fahad A. Habib (*pro hac vice forthcoming*)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Counsel for Kuveyt Türk Katılım Bankası A.Ş.*

15

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this motion complies with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 7.1(c). Excluding the parts of this motion exempted by the local rule, the motion contains 3,218 words and has been prepared using Microsoft Word in Times New Roman 14-point font.

/s/ *Steven T. Cottreau*
Steven T. Cottreau
*Counsel for Kuveyt Türk*
*Katılım Bankası A.Ş.*

16