**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: APPLICATION TO OBTAIN DISCOVERY FROM FIVE BANKS FOR USE IN INTERNATIONAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782   )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25-mc-414 (AS) |

**KUVEYT TÜRK KATILIM BANKASI A.Ş.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTIONS**
**FOR RELIEF FROM THE § 1782 ORDER, FOR A**
**PROTECTIVE ORDER, AND FOR TARGETED  DISCOVERY**

Steven T. Cottreau
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, DC 20001
(202) 879-3939

Fahad A. Habib (*pro hac vice forthcoming*)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Counsel for Kuveyt Türk Katılım Bankası A.Ş.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

    A.    ENEXD's Application ................................................................3

    B.    Purported Role of Kuveyt Türk ..................................................6

    C.    This Court's § 1782 Order .........................................................8

    D.    Kuveyt Türk's Investigation .....................................................8

    E.    Other Frauds Perpetrated by ENEXD's Principals....................9

ARGUMENT ......................................................................................................13

    I.    THE COURT SHOULD REVOKE ITS AUTHORIZATION
        TO SERVE THE SUBPOENAS.......................................................14

        A.    The Court Should Grant Relief to Give Kuveyt Türk an
            Opportunity to Contest the Application Because Not
            Doing So Earlier Is Excusable ..................................................14

        B.    Rule 60 Relief Is Also Warranted Because of New
            Evidence and Misrepresentation ...............................................15

    II.    ENEXD's APPLICATION SHOULD BE DENIED.........................20

    III.    THE COURT SHOULD GRANT A PROTECTIVE ORDER
         PENDING A DECISION ON THIS MOTION ...............................22

    IV.    THE COURT SHOULD ALLOW TARGETED DISCOVERY
         REGARDING THE FALSE TRANSACTION RECORD................25

CONCLUSION ...................................................................................................28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d (S.D.N.Y. 2016) .........................................................................25

*Ampong v. Costco Wholesale Corp.*,
550 F. Supp. 3d (S.D.N.Y. 2021) .........................................................................22

Cardona v. City of New York,
2007 WL 690126 (S.D.N.Y. Mar. 7, 2007).........................................................14

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
286 F. Supp. 2d 309 (S.D.N.Y. 2003) .................................................................20

*Chambers v. Nasco, Inc.*,
501 U.S. 32 (1991).................................................................................................25

*Doe v. Grand Jury of E. Dist. of N.Y.*,
1986 WL 14620 (E.D.N.Y. Nov. 28, 1986) .........................................................25

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*,
2008 WL 11510668 (S.D.N.Y. June 12, 2008) .............................................23, 24

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) .................................................................................21

*G-I Holdings, Inc. v. Baron & Budd*,
218 F.R.D. 409 (S.D.N.Y. 2003) ..........................................................................26

*In re Palladian Partners, L.P.*,
2025 WL 2814719 (S.D.N.Y. Oct 3, 2025)...............................................17, 20, 22

*In re Republic of Turkiye*,
2025 WL 2200159 (S.D.N.Y. Aug. 1, 2025)........................................................20

*In re Terrorist Attacks on Sept. 11, 2001*,
  No. 03-md-1570 (S.D.N.Y. Sept. 12, 2021)......................................................26

*In re WinNet R CJSC*,
  2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) .............................................20, 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)........................................................................................21

*Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*,
  2020 WL 5097076 (N.D. Ill. Aug. 28, 2020) .................................................24

*Kenney, Becker LLP v. Kenney*,
  2008 WL 681452 (S.D.N.Y. Mar. 6, 2008).....................................................25

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
  2017 WL 4224770 (N.D. Cal. Sept. 22, 2017).................................................23

*Novella v. Westchester County*,
  2004 WL 3035405, at *7 (S.D.N.Y. Dec. 29, 2004) .......................................25

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1999)........................................................................................14

*Reese v. McGraw-Hill Cos.*,
  293 F.R.D. 617 (S.D.N.Y. 2013);....................................................................16

*SEC v. Dang*,
  2021 WL 1550593 (D. Conn. Apr. 19, 2021)...................................................19

*Shangold v. Walt Disney Co.*,
  2006 WL 71672 (S.D.N.Y. Jan. 12, 2006) ......................................................25

*Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv.
  Mgmt. Co.*,
  650 F. Supp. 3d (S.D.N.Y. 2023) ...............................................................21, 22

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
  206 F.R.D. 367 (S.D.N.Y. 2002)......................................................................23

*State Farm Mut. Auto. Ins. Co. v. Fayda,*
  2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) ....................................................24

*United States v. $25,002.05 seized from JPMorgan Chase Acct.*
  *ending in XXXX, held in name of Olumodeji,*
  2025 WL 1168242 (N.D.N.Y. Apr. 22, 2025)....................................................14

*United States v. Clarke,*
  573 U.S. 248, 254 (2014)................................................................................25

*United States v. Int'l Bd. of Teamsters,*
  247 F.3d 370 (2d Cir. 2001) ...........................................................................15

## STATUTES

28 U.S.C. § 1746....................................................................................................27

28 U.S.C. § 1782...............................................................................................passim

## RULES

Fed. R. Civ. P. 45 ..................................................................................................22

Fed. R. Civ. P. 26 ..................................................................................................22

Fed. R. Civ. P. 60 ........................................................................................ 14-17, 20

## **INTRODUCTION**

Energy Exploration and Development Limited ("ENEXD") has sought and been granted extensive discovery into the US financial records of Kuveyt Türk Katılım Bankası A.Ş. ("Kuveyt Türk") based on a single factual allegation: that on February 14, 2023, Kuveyt Türk conducted a $5.7 million wire transfer between Iranian and Kuwaiti entities. But that transaction never happened. And the document ENEXD submitted to this Court to prove the transaction is a fake.

That is not the only falsehood ENEXD has presented to this Court in connection with its application. ENEXD also claimed that it is entitled to discovery concerning the banking records of another Turkish bank, Türkiye Finans Katılım Bankası ("Türk Finans") because it conducted two transactions between Iranian and Kuwaiti entities. Counsel for Kuveyt Türk believes that the records submitted to this Court concerning those Türk Finans transactions are also fraudulent.

This is not the first time fraud has been committed by ENEXD's principals. ENEXD is owned and operated by spouses Ms. Delaram Zavarei and Mr. Reza Mostafavi Tabatabaei. Wong Decl. ¶ 28, ECF No. 3. Public records reveal that the fraud on this Court is (at least) their fourth significant fraud. First, Mr. Tabatabaei participated in a scheme to defraud a company controlled by Iran of more than $87 million—as determined by the High Court of Justice of England and Wales. Part of that scheme involved entering into agreements that "did not accurately reflect

1

services" that he or his company had provided. 2019 English High Court Op. ¶ 163, Dkt. 20-1 (Exhibit A to Cottreau Decl.). The High Court found that Mr. Tabatabaei engaged in "dishonest participation in the defrauding of" that company. *Id.* ¶ 130.

Second, in connection with the adjudication of that fraud, the High Court found Mr. Tabatabaei to "have deliberately lied" in the civil proceeding. *Id.* ¶ 121. As the Court also explained, Mr. Tabatabaei was "dishonest both in the conduct of the fraud and … in his evidence to the court at the trial of these proceedings." 2020 English High Court Op. ¶ 18, Dkt. 20-2 (Exhibit B to Cottreau Decl.).

Third, in the subsequent judicial proceedings to enforce the judgment, both Mr. Tabatabaei and Ms. Zavarei continued a pattern of dishonesty. Mr. Tabatabaei "gave answers in relation to his knowledge that were manifestly untrue." *Id.* ¶ 60. And Ms. Zavarei presented evidence that was "inherently improbable … and untrue." *Id.* ¶ 58. Now, their company ENEXD has presented to this Court on an *ex parte* basis at least two fraudulent documents and induced this Court's reliance.

This Court should not allow sweeping discovery into Kuveyt Türk's financial affairs on the basis of ENEXD and its principals' false allegations. Indeed, the banking records sought by ENEXD's subpoenas would reveal the names, transactions, and business affairs of likely thousands of bank customers that transacted in US dollars—and the names and affairs of their counter-parties—all with no limitations on their use. Given the fraudulent basis for this Court's

2

authorization, the Court should revoke its authorization for the subpoenas and allow Kuveyt Türk limited discovery into how this false evidence came to be presented to this Court. And, as the Court considers these requests, Kuveyt Türk respectfully requests a protective order holding the subpoenas in abeyance.

## BACKGROUND

### A. ENEXD's Application

On September 22, 2025, ENEXD asked this Court to grant its *ex parte* application for discovery under 28 U.S.C. § 1782, which gives a court discretion to order discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *see* Mot., ECF No. 1. ENEXD claimed that it needed discovery for ongoing proceedings in the United Arab Emirates, where it seeks to enforce an arbitration award, and for potential proceedings in the United Kingdom. Mem. of Law 1, ECF No. 2.

ENEXD claimed that it planned to file an action in the UK alleging a conspiracy between Iranian and other entities to defraud it of millions. The conspiracy allegations are related to Ms. Zavarei and Mr. Tabatabaei's earlier frauds mentioned above. Specifically, in 2016, an Iranian state-owned entity, the Iranian Offshore Engineering and Construction Company ("IOEC") sued Mr. Tabatabaei in the United Kingdom for a fraud. Wong Decl. ¶ 30; 2019 English High Court Op. ¶ 67, Dkt. 20-1 (Exhibit A to Cottreau Decl.). The "essence" of IOEC's claim was

3

that it "paid an amount of US$87 million as the price of an oil rig, but did not acquire the rig, and the amount which it paid by way of the price was misappropriated by or with the collusion of" Mr. Tabatabaei and other defendants.  2019 English High Court Op. ¶ 1, Dkt. 20-1 (Exhibit A to Cottreau Decl.).  In 2019, The English High Court found "that a fraud [had been] practised upon" the IOEC and entered an $87 million judgment against Mr. Tabatabaei.  2019 English High Court Op. ¶¶ 135, 174, Dkt. 20-1 (Exhibit A to Cottreau Decl.).  The IOEC then tried to collect that judgment from him and Ms. Zavarei.  2020 English High Court Op. ¶ 1, Dkt. 20-1 (Exhibit A to Cottreau Decl.);  Wong Decl. ¶ 32.

Before the $87 million judgment was entered in 2019, ENEXD allegedly entered into a profit-sharing agreement with Nordic Energy FZE ("Nordic") in December 2017.  Wong Decl. ¶ 7(a)(iii).  Under this agreement, ENEXD would give Nordic "approximately USD15 million" in equipment "in exchange for a share of the profits that were to be derived from contracts" Nordic and its part-owner Energy House Holding Company ("Energy House") had with Saudi entities.  *Id.* ¶¶ 7(a)(ii), 9 & 11.  "By August 2019," ENEXD asserts, "the relationship between ENEXD and Nordic had broken down," and ENEXD terminated the profit-sharing agreement and requested the equipment's return.  *Id.* ¶ 15.

ENEXD then spins its elaborate conspiracy theory.  It claims that the profit-sharing arrangement with Nordic and Energy House "was never a genuine

4

commercial opportunity … and was instead a front contrived" by IOEC and other Iranian entities to "deprive ENEXD of its assets." *Id.* ¶ 36(a). "It is ENEXD's view that … [s]hortly after the execution of the [profit-sharing agreement], and following the transfer of the [e]quipment," Nordic and Energy House "abandoned the [agreement] at the direction of" those Iranian entities. *Id.* ¶ 36.

To "induce[]" Nordic and Energy House to conspire against ENEXD, the Iranian Regime allegedly granted them contracts and payments, through a web of Iranian state-owned entities. *Id.* ¶ 38. As ENEXD tells it, IOEC is a subsidiary of the National Iranian Oil Company ("NIOC"), *id.* ¶ 7(b)(i), which controls the Iranian Offshore Oil Company ("IOOC"). *Id.* ¶ 7(b)(iii). In October 2017 and June 2018, IOOC allegedly invited Nordic to participate in a tender round, and in December 2017, awarded Nordic a contract worth about 36 million euros. *Id.* ¶ 37(a)-(c). NIOC also controls NIOC International Affairs (London) Limited ("NIOC International"). *Id.* ¶ 7(b)(ii). On three occasions from March 2019 to May 2023, ENEXD claims, NIOC International sent millions in US dollars to Nordic, Energy House, and other related entities (who ENEXD calls together the "Kuwaiti Entities"). *Id.* ¶¶ 7(d)-(e). These contracts and payments "rewarded" the Kuwaiti Entities "handsomely … for pursuing [Iran's] conspiratorial vendetta against ENEXD." *Id.* ¶ 37.

5

B. **Purported Role of Kuveyt Türk**

ENEXD asserted that to prove its vast conspiracy claims, it needed wide-ranging discovery into eight years of detailed financial records for all the US correspondent accounts for two Turkish banks: Kuveyt Türk and Türkiye Finans Katılım Bankası ("Türk Finans"). *See* Mem. of Law 13; Proposed Subpoena, ECF No. 2-1 at p. 6, 8-9. Those banks, ENEXD claimed, had been used by Iranian entities to give millions of dollars to Kuwaiti entities as a reward for their defrauding ENEXD. Mem. of Law 7-8; Wong Decl. ¶ 37. And because the Iranian and Kuwaiti entities used US dollars, ENEXD explained that the Turkish banks processed those transactions through their correspondent bank accounts in the United States. Wong Decl. ¶ 40.

Kuveyt Türk is not alleged to have entered into any contract with ENEXD or to have taken ENEXD's equipment. ENEXD's sole basis for tying Kuveyt Türk to this scheme is a single transaction that allegedly occurred on February 14, 2023. According to ENEXD's UK lawyer (Josh Wong), "a payment of USD5,705,441.82 was made to Petrolem Gulf Energy Trading LLC and Energy House from NIOC (International) using an account held at Kuveyt Turk Katilim Bankasi ." Wong Decl. ¶ 37(e); *see id.* ¶ 7(a)(ii), (b)(ii); *accord* Mem. of Law 8 .

To support its allegations, ENEXD attached to its application (the first page of Exhibit 11 to the Wong Declaration) a purported record referencing the single

6

transaction allegedly involving Kuveyt Türk. Wong Exhibit 11, ECF No. 3-12 at p. 2. This record purports to show that, on the "transaction date" of February 14, 2023, $5,705,441.85 was taken from a "debit account" numbered 36063425 and named "Kuveyt Türk Katilim Bankasi." *Id.* The "main beneficiary" of this transaction was "PGE Trading LLC – Energy House Holding Co." *Id.* The transaction details are printed on NIOC International Affairs' letterhead. *Id.* The value date of this supposed transaction was February 16, 2023. *Id.* An excerpt of that alleged record is here:

```
View Transaction Details – Telegraphic Transfer
Transaction Date                    14-02-2023
Value Date                          16-02-2023
System Reference                    1986015592Fc
Transaction Reference               Credit
Debit Account                       36063425
Account Name                        KUVEYT TURK KATILIM BANKASI
Special Instructions                Main Beneficiary: PGE Trading LLC - Energy
                                    House Holding Co - PGE 2023 025 - ADAMCO
Charges                             TRX
Total Indicative Debit Amount       USD 5,705,441.82
```

ENEXD's application conspicuously omits any information about the source for this supposed record. *See* Wong Decl. ¶¶ 37-43. By contrast, ENEXD attributes other information in its declaration to specific (albeit anonymous) sources. *See id.* ¶ 22 (referring to "evidence from a currently anonymous source who is high up in

7

the Iranian oil and gas industry" that in 2025 an Iranian entity purchased certain equipment).

To try to show that the record in Exhibit 11 is connected to Kuveyt Türk, ENEXD also attached Kuveyt Türk's settlement information (which are standard banking instructions listing the accounts held by Kuveyt Türk so other banks can properly route funds to Kuveyt Türk or its customers). Wong Exhibit 14, ECF No. 3-15. Those instructions accurately show that Kuveyt Türk has a correspondent account for US dollar transactions at Citibank, N.A. numbered 36063425—the number that appears on Exhibit 11.

### C. This Court's § 1782 Order

ENEXD's application does not appear to have been served upon any party. On October 1, just nine days after receiving the application, this Court granted the requested discovery. Order, ECF No. 10. But the Court issued its order "without prejudice to any objection that any of the banks may raise." *Id.* Counsel for ENEXD then served subpoenas. ENEXD never notified Kuveyt Türk of the subpoenas.

Kuveyt Türk did not learn of this action until October 20, 2025. Kuveyt Türk subsequently retained undersigned counsel in connection with this matter.

### D. Kuveyt Türk's Investigation

Kuveyt Türk promptly commenced an investigation into the one $5.7m transaction allegedly involving it. As Kuveyt Türk's Head of Financial Institutions

8

explains in his attached declaration, Kuveyt Türk searched the records of its Citibank account numbered 36063425 for February 2023, and found no incoming or outgoing transaction for $5,705,441.82 that month.  Yazıcı Decl. ¶ 8, Dkt. 18.

Out of an abundance of caution, Kuveyt Türk then broadened its search.  It reviewed all of its Citibank transactions from February 14 through 16, as well as for a week before and a week after those dates.  *Id.* ¶ 9.  And it found not a single transaction even close to the amount claimed—neither within $10,000 below or within $10,000 above the supposed transaction amount.  *Id.*  Simply put, the transaction never occurred—and the document in Wong Exhibit 11 supposedly showing a wire transfer is fraudulent.

## E. Other Frauds Perpetrated by ENEXD's Principals

ENEXD explains that "its ultimate beneficial owner" is Ms. Delaram Zavarei and that "her husband and business partner" is Mr. Reza Mostafavi Tabatabaei.  *See* Wong Decl. ¶¶ 1(a), 28.  The English High Court noted that ENEXD is "a company owned and controlled by Mr Tabatabaei."  2019 English High Court Op. ¶ 2, Dkt. 20-1 (Exhibit A to Cottreau Decl.).  Zavarei and Mr. Tabatabaei have a history of repeated fraud, including the submission of false evidence to courts.

Six years ago, the High Court of Justice of England and Wales found Mr. Tabatabaei liable for participating in an $87 million fraud on the Iranian Offshore Engineering and Construction Company, "an engineering, procurement and

9

construction contractor in the offshore oil and gas sector." *See* 2019 English High Court Op. ¶¶ 18, 163, 170, Dkt. 20-1 (Exhibit A to Cottreau Decl.). "The essence of [the] case" was that IOEC "paid an amount of US$87 million as the price of an oil rig, but did not acquire the rig, and the amount which it paid by way of the price was misappropriated by or with the collusion of" Mr. Tabatabaei and other defendants. *Id.* ¶ 1.[1] In doing so, the court considered Mr. Tabatabaei's attempts to distance himself from documents tying him to the fraud. *See id.* ¶¶ 106-121. Mr. Tabatabaei claimed that someone had forged his signature on one such document and, later, when that argument failed, switched to saying that his "signature had been written on the paper" before the document's text was printed. *See id.* ¶¶ 106-107. He further argued that emails supporting that document's authenticity were fabricated too. *Id.* ¶ 117. On a close examination, the court concluded that all those documents were genuine. "[G]iven the nature" of Mr. Tabatabaei's case, the court added, "it follows that <u>he must have deliberately lied</u> about the nature of his involvement in these arrangements and with these documents." *Id.* ¶ 121 (emphasis

---

[1] The English High Court was "prepared to accept that Mr Tabatabaei's political and ideological positions have contributed to the vigour with which IOEC has pursued him." 2019 English High Court Op. ¶ 72, Dkt. 20-1 (Exhibit A to Cottreau Decl.). But the court "did not conclude, however, … that these matters had resulted in IOEC, or the government of Iran, inventing an otherwise unsupported case against Mr Tabatabaei." *Id.* ¶ 73. "Mr Tabatabaei [would] be found liable on the basis of the evidence, not on the basis of the government of Iran's animosity to him." *Id.* Instead, the company had proven the fraud through "relevant and admissible evidence." *Id.* ¶ 73.

added).  Later, the court concluded, "Mr. Tabatabaei's involvement in these matters was <u>dishonest</u>."  *Id.* ¶ 163 (emphasis added).  Not only did he participate in the fraud by, among other things, entering into Brokerage Agreements that "did not accurately reflect services which he or Sepanta had provided," he also tried "during th[e] litigation to deny his role, including by <u>creat[ing] a false story</u> to account for documents which indicated his responsibility."  *Id.* (emphasis added).

The very next year, the High Court of Justice once again found that Mr. Tabatabaei—as well as Ms. Zavarei—had lied to the court.  After the fraud judgment, Mr. Tabatabaei filed for bankruptcy and was later discharged.  2020 English High Court Op. ¶ 8, Dkt. 20-1 (Exhibit A to Cottreau Decl.).  IOEC sought a declaration that Mr. Tabatabaei had a beneficial interest in a property held by Ms. Zavarei; if so, the net equity from a pending sale of that property could "be available … for the collective benefit of his creditors," including IOEC.  *Id.* ¶¶ 1-2.

Before beginning to analyze their testimony, the English High Court of Justice pointed out that their history of lies required it to approach their evidence with "great caution."  *Id.* ¶ 18; *see* ¶ 16.  Ms. Zavarei, the High Court recounted, had previously "overstated" and "exaggerated" her business's conduct in her application to remain in the United Kingdom on an entrepreneur visa.  *Id.* ¶ 16.  And Mr. Tabatabaei, the court remembered, had been "dishonest … in his evidence to the court" in the fraud proceedings.  *Id.* ¶ 18.  The court then proceeded to find answer after answer of Mr.

11

Tabatabaei's in the current litigation "<u>untruthful</u>," and one even "<u>plainly untruthful</u>." *Id.* ¶¶ 52-54, 60. Specifically, the High Court found that Mr. Tabatabaei lied when he denied that it was "obvious … by the middle of 2015 that IOEC" was taking steps to recover money from him, *id.* ¶ 52; that, by the time his wife bought the property, he "knew very well that [he was] likely to be the subject of very large claims," *id.* ¶ 53; that "by the end of 2015" he knew that he was "facing very large financial claims in connection with the loss of $87 million," *id.* ¶ 54; and that he had not told his wife by then of the allegations, *id.* ¶¶ 56, 60.

Ms. Zavarei's testimony also was untrue and deceitful. Although Ms. Zavarei claimed at trial that Mr. Tabatabaei "did not inform her of the allegations being made against him in 2015 and that she was not aware of them until 2018," the court found that claim was also "untrue"—it was inconsistent with her other testimony and "contradicted by her earlier and unforced answer that she knew [about those allegations] from 2016." *Id.* ¶¶ 58-59, 61. Because of both Mr. Tabatabaei's and Ms. Zavarei's lies, the court concluded that it could not "accept [their] evidence other than to the extent that it is corroborated by a document or witness whose evidence I can accept or is contrary to [their] interests or is admitted." *Id.* ¶¶ 18 (with respect to Mr. Tabatabaei"), 61 ("reaching similar conclusions in relation to [Ms. Zavarei's] evidence as those [it had] so far reached concerning [Mr. Tabatabaei's] evidence").

12

The false transaction record presented to this Court is thus part of a larger pattern of trying to deceive courts.  As a result, Kuveyt Türk notified this Court last week that it planned to challenge the subpoenas and the underlying order.  ECF No. 12.  Kuveyt Türk now makes that challenge, and has simultaneously asked this Court for permission to intervene.[2]

## ARGUMENT

This Court should consider whether to grant ENEXD's application anew now that Kuveyt Türk has sought to intervene and challenge the application.  As noted above, Kuveyt Türk did not have notice of the application before this Court granted it.  As detailed below, several bases support granting ENEXD relief from the order granting the application.  In addition, the Court should permit targeted discovery to confirm the presentation of fraudulent evidence to this Court, determine how such a presentation occurred, and to permit Kuveyt Türk to determine what relief to seek from this Court as a result of ENEXD's misrepresentation.

---

[2] Counsel for Kuveyt Türk conferred with counsel for ENEXD regarding this motion, who declined to consent.

13

## I. THE COURT SHOULD REVOKE ITS AUTHORIZATION TO SERVE THE SUBPOENAS

### A. The Court Should Grant Relief to Give Kuveyt Türk an Opportunity to Contest the Application Because Not Doing So Earlier Is Excusable

A court may relieve a person from an order where, as here, that person's failure to challenge the request for that order was "excusable." Fed. R. Civ. P. 60(b)(1). In determining whether to grant that relief on that basis, courts weigh "(1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *United States v. $25,002.05 seized from JPMorgan Chase Acct. ending in XXXX, held in name of Olumodeji*, 2025 WL 1168242, at *2 (N.D.N.Y. Apr. 22, 2025).

"The pivotal determinant of 'excusable neglect' is the reason for the delay in light of the movant's good faith efforts and whether the circumstances were within the movant's reasonable control." *Cardona v. City of New York*, 2007 WL 690126, at *3 (S.D.N.Y. Mar. 7, 2007) (quotation marks omitted). Here, that determinant favors Kuveyt Türk. As detailed in its motion to intervene, that Kuveyt Türk did not challenge the application before the Court granted it was a "simple, faultless omission[] to act." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1999). Kuveyt Türk was unaware of the application until 19 days

14

after it was granted and has still not been formally served with notice. In the two and a half weeks since then, Kuveyt Türk retained undersigned counsel, investigated the application's claims, discovered that the transaction tying Kuveyt Türk to this matter is false and the record showing such a transaction is fraudulent, and prepared this motion and the motion to intervene.

Meanwhile, there is little risk of prejudice to ENEXD, which has demonstrated no imminent need for the documents. *See* Mot. to Intervene 5; Wong Decl. ¶¶ 24-27, 47-48. And the minimal and understandable delay before Kuveyt Türk filed its motion will have little impact on the judicial proceedings. This Court already recognized that its order might be challenged after its issuance, granting the application "without prejudice to any objection that any of the banks may raise." Order 1, ECF No. 10. No documents have even been produced yet. Kuveyt Türk's delay in challenging the order was thus entirely excusable, and it should be granted relief from the order pending further inquiry into ENEXD's fraud.

### B.    Rule 60 Relief Is Also Warranted Because of New Evidence and Misrepresentation

Kuveyt Türk's request for relief from the order is also appropriate because Kuveyt Türk has discovered new evidence and ENEXD procured the order through misrepresentation and fraud. Fed. R. Civ. P. 60(b)(2) & (3).

First, a court can grant relief under Rule 60(b)(2) when a movant presents "newly discovered evidence that, with reasonable diligence, could not have been

15

discovered" within 28 days of entry of judgment. *Reese v. McGraw-Hill Cos.*, 293 F.R.D. 617, 622 (S.D.N.Y. 2013); *see* Fed. R. Civ. P. 60(b)(2). To obtain that relief, Kuveyt Türk must show that its new evidence is "of facts that existed at the time of" the proceeding, that it was "justifiably ignorant of them despite due diligence," that the evidence is "admissible and of such importance that it probably would have changed the outcome," and that the evidence is not "merely cumulative or impeaching." *United States v. Int'l Bd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

Kuveyt Türk can make these showings. Here, the relevant facts—that the alleged transaction never occurred and that Ms. Zavarei and Mr. Tabatabaei have a history of fraud and false statements—all existed before ENEXD filed its application. Kuveyt Türk also was justified in not presenting those facts because it had no reason to look for that evidence until 19 days after the court's order was entered, when it learned of ENEXD's application. Kuveyt Türk then acted diligently. On October 28, 2025, Kuveyt Türk retained US counsel, and in the 10 days since then, confirmed that the alleged transaction was false and the document supporting the allegation was fraudulent, obtained that confirmation in an admissible declaration, *see* Yazıcı Decl., and prepared these motion papers.

This evidence that ENEXD falsified key documents likely would have led the Court to deny the discovery order, too. Not only does this evidence undermine

16

ENEXD's sole basis for demanding Kuveyt Türk's financial records, but it also (as explained in more detail below) provides grounds for discarding the application entirely. *See, e.g.*, *In re Palladian Partners, L.P.*, 2025 WL 2814719, at *10-15 (S.D.N.Y. Oct 3, 2025) (denying § 1782 application when, at bottom, the discovery appeared to be sought in bad faith). In brief, the Court should provide relief from the order under Rule 60(b)(2) so that it can consider the new evidence that Kuveyt Türk can present.

Second, this Court should also grant relief under Rule 60(b)(3) based upon "fraud …, misrepresentation, or misconduct by an opposing party." ENEXD misrepresented Kuveyt Türk's connection to this case. The only connection asserted is a single transaction: allegedly, "NIOC International Affairs transferred a $5.7 million in USD to an account at Kuveyt Turk, and the payment beneficiary was 'PGE Trading LLC – Energy House Holding Co.'" Mem. of Law 8. In support of that allegation, ENEXD (through Mr. Wong) attached page 2 of Exhibit 11. That document purports to show on February 14, 2023, the "Debit Account" 36063425 for "Account Name" "Kuveyt Türk Katilim Bankasi" was debited $5,705,441.81. The account number matches that for Kuveyt Türk's correspondent account with Citibank N.A.[3] For the whole month of February 2023, however, no transaction

---

[3] As ENEXD's own application demonstrates, the account number was publicly available. Wong Exhibit 14, ECF No. 3-15. Accordingly, the fact that page 2 of

occurred in that amount of $5,705,441.81.  Yazıcı Decl. ¶ 8.  Nor did a transaction for anything close to that amount—from $10,000 lower to $10,000 higher—occur anytime from February 7 to 23, 2023.  *Id.* ¶ 9.  The purported transaction is false and fraudulent.

Undersigned counsel has a good-faith basis to believe that is not the only fake transaction record in this case.  ENEXD also alleged that two transactions occurred through Türk Finans.  For one of those transactions, ENEXD asserts, "on May 8, 2023, NIOC International transferred $5.58 million in USD [to] an account at Türk Finans."  Mem. of Law 8.  In support of that allegation, ENEXD (again, through Mr. Wong) attached page 5 of Exhibit 12.  That document purports to show that on May 8, 2023, the "Debit Account" "ending 3214" for "TURK FINANS KATILIM BANKASI" was debited $5,580,944.21.  The account number matches that for Türk Finans's correspondent account with JPMorgan Chase Bank, N.A.  Undersigned counsel believes that transaction did not happen and the purported record is also false and fraudulent.

ENEXD's reliance on fake transaction records cannot be chalked up to accident.  The two key persons associated with ENEXD—Ms. Zavarei and her

---

Exhibit 11 contains Kuveyt Türk's Citibank account number does not suggest that it is genuine.

18

husband and business partner Mr. Tabatabaei—have a long history of fraud and lying to courts.

1. As found by the English High Court, Mr. Tabatabaei committed an $87 million fraud on Iran. 2019 English High Court Op. ¶ 163, Dkt. 20-1 (Exhibit A to Cottreau Decl.).

2. In defending himself, Mr. Tabatabaei repeatedly lied to the English High Court. That court found that he had "create[ed] … a false story to account for documents which indicated his responsibility for the activities of" other defendants that perpetrated the fraud. *Id.* ¶ 163.

3. In a subsequent proceeding relating to whether creditors could use a property held by Ms. Zavarei to satisfy Mr. Tabatabaei's debts, both ENEXD principals lied to the English High Court again. As to ENEXD's owner, the court found Ms. Zavarei's testimony "inherently improbable" and "untrue." 2020 English High Court Op. ¶¶ 58, 59, 61, Dkt. 20-1 (Exhibit A to Cottreau Decl.). And as to her husband and business partner, it repeatedly noted that Mr. Tabatabaei's testimony was "untruthful" and, at times, "plainly" so. *Id.* ¶¶ 52-54, 60. The court also recognized that Ms. Zavarei had previously presented an "overstated" and "exaggerated" account of her business to bolster her immigration application. *Id.* ¶ 16. This pattern of "repeated lies" by the two people who run ENEXD shows a

19

"high degree of scienter" on its part when it misrepresented a crucial fact supporting its application. *SEC v. Dang*, 2021 WL 1550593, at \*8 (D. Conn. Apr. 19, 2021).

The false transaction purporting to connect Kuveyt Türk to the underlying controversy also "substantially interfered" with the Court's ability to assess the case "fully and fairly." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 316 (S.D.N.Y. 2003). "[C]andor is, if anything, more critical when ex parte applications are made to the court" because those affected have no chance to contest the applicants' claims before the order is granted. *In re WinNet R CJSC*, 2017 WL 1373918, at \*9 (S.D.N.Y. Apr. 13, 2017). A court must rely on an *ex parte* applicant's telling the truth. Where, as here, an applicant takes advantage of a proceeding's ex parte nature, this Court should grant relief under Rule 60(b)(3).

## II.    ENEXD'S APPLICATION SHOULD BE DENIED

ENEXD's misrepresentations alone justify denying ENEXD's application. Courts "reviewing subsequent challenges to [§ 1782] orders" often "conduct[] a *de novo* review of whether the application satisfied the statute's requirements and whether the discovery was properly authorized in light of the discretionary *Intel* factors." *In re Republic of Turkiye*, 2025 WL 2200159, at \*6 (S.D.N.Y. Aug. 1, 2025). Under those discretionary factors, courts consider whether an applicant "is pursuing discovery in bad faith." *In re Palladian Partners*, 2025 WL 2814719, at \*10 (S.D.N.Y. Oct. 3, 2025). If a court finds that the application was "made in bad

faith," it is "free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995).

Courts have found sufficient evidence of bad faith where, as here, an applicant failed to make a "full and fair description" of the material facts. *In re WinNet R CJSC*, 2017 WL 1373918, at *9. ENEXD did not just omit information that "may very well have led the court to deny the application," *id*; it presented false allegations and fraudulent documents. In fact, without that February 2023 transaction, ENEXD has no basis for requesting Kuveyt Türk's financial records. And, although the application made reference to the English High Court proceedings, ENEXD never attached the 2019 and 2020 decisions in that case or explained that the English High Court found that one of ENEXD's principals committed fraud and lied repeatedly to the tribunal. This Court should therefore deny ENEXD's application for the subpoenas and relieve Kuveyt Türk from the subpoenas it has already authorized.

Courts exercising their discretion to grant a § 1782 order also consider whether the discovery sought is "unduly intrusive or burdensome," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 265 (2004), and take guidance from the Federal Rules of Civil Procedure, 28 U.S.C. § 1782(a). Under those rules, when "a movant claims a privacy interest in information subject to a subpoena," the court "weigh[s] the relevance or probative value of the documents being sought to against

21

the privacy interests . . . asserted." S*ilverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv) and 26(b)(1)).  Here, based on a single supposed transaction in Kuveyt Türk's Citibank account that never happened, ENEXD has demanded almost eight years of Kuveyt Türk's detailed financial records in the United States.  ENEXD made no effort to narrow the range of transactions—instead it sought information about every transaction that Kuveyt Türk and its customers conducted in US dollars.  Such information would reveal to fraudsters vast quantities of information about Kuveyt Türk's customers, including their names, transaction amounts, and their wire-transfer counterparties.  Nothing in the subpoena limited disclosure related to particular entities that ENEXD visions in a retaliatory conspiracy against its principals.  Such a blunderbuss approach from an entity controlled by repeated fraudsters purportedly in aid of speculative litigation suggests that this discovery is "little more than a fishing expedition" that this Court should thwart.  *In re Palladian Partners*, 2025 WL 2814719, at \*15.

## III.    THE COURT SHOULD GRANT A PROTECTIVE ORDER PENDING A DECISION ON THIS MOTION

Rule 26(c) allows a court to issue a protective order for "good cause."  Fed. R. Civ. P. 26(c).  This standard "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is requested." *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021).

22

And one form of protection a court can provide under Rule 26(c) is a stay of discovery. *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002)

Good cause for a stay of discovery may be shown where a party has filed a motion that may dispose of the whole case, "the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002); *see also Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4224770, at *3 (N.D. Cal. Sept. 22, 2017). In assessing whether good cause exists for a stay, courts also have "broad discretion to consider a number of factors": among them, "the breadth of discovery sought," "the burden of responding to it," "the strength of the motion that the stay request is based upon," "the nature and complexity of the action," whether "some or all of the defendants have joined in the request for the stay," and "the posture or stage of the litigation." *Spencer Trask Software*, 206 F.R.D. at 368; *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, 2008 WL 11510668, at *2 (S.D.N.Y. June 12, 2008).

These factors show that, on balance, Kuveyt Türk has shown good cause for a protective order that stays subpoena responses pending resolution of this motion and an ultimate determination of whether ENEXD should be permitted the discovery it seeks. A stay pending resolution of a motion that might "eliminate[] the entire

23

action will neither substantially nor unduly delay the action." *Ellington Credit Fund*, 2008 WL 11510668, at \*2. And as already noted, delaying discovery for that period will not prejudice ENEXD. True, Kuveyt Türk's motion is not a "preliminary" one, nor is this suit particularly complex. *Id.* at \*3. The respondent banks have also not joined Kuveyt Türk in requesting a stay at this time. *See id.* Even so, those considerations are outweighed by the mounting evidence that ENEXD procured the subpoenas through fraud and the sweeping discovery into eight years of Kuveyt Türk's US financial records (and the transactions of its customers) that those subpoenas would facilitate.

To preserve Kuveyt Türk's privacy rights while the Court's investigation into the fraud proceeds, this Court should issue a protective order staying discovery. Should the Court decline to issue the stay, it should at the very least prevent disclosure of Kuveyt Türk's account records—and prevent its misuse by ENEXD, Ms. Zavarei, and Mr. Tabatabaei—by designating them confidential and for attorney's eyes only. *See State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at \*5 (S.D.N.Y. Dec. 3, 2015); *Johnson & Johnson v. Advanced Inventory Mgmt., Inc.*, 2020 WL 5097076, at \*3 (N.D. Ill. Aug. 28, 2020) (attorney's-eyes-only designation).

24

## IV.    THE COURT SHOULD ALLOW TARGETED DISCOVERY REGARDING THE FALSE TRANSACTION RECORD

The Court should also allow Kuveyt Türk to conduct targeted discovery into the fraud perpetrated here.  Courts may hold evidentiary hearings to resolve discovery disputes.  *Novella v. Westchester County*, 2004 WL 3035405, at \*7 (S.D.N.Y. Dec. 29, 2004).  And, more specifically, when addressing subpoenas, courts can hold evidentiary hearings to investigate non-speculative allegations of bad faith.  *See, e.g.*, *United States v. Clarke*, 573 U.S. 248, 254 (2014); *Doe v. Grand Jury of E. Dist. of N.Y.*, 1986 WL 14620, at \*1 (E.D.N.Y. Nov. 28, 1986).

Discovery is all the more appropriate because this Court has inherent authority "to conduct an independent investigation in order to determine whether it has been the victim of fraud."  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991); *see, e.g.*, *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) (holding two-day evidentiary hearing and taking submissions to determine whether a party had perpetrated a fraud on the court); *see also Kenney, Becker LLP v. Kenney*, 2008 WL 681452, at \*2 (S.D.N.Y. Mar. 6, 2008) (invoking that inherent authority in the context of the "improper use of the Court's subpoenas").  These powers enable courts to "do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." *Shangold v. Walt Disney Co.*, 2006 WL 71672, at \*4 (S.D.N.Y. Jan. 12, 2006).

25

ENEXD took advantage of this Court and the *ex parte* § 1782 process. It used misrepresentation to obtain sweeping discovery. And it did so even after the English High Court found that ENEXD's principals had committed fraud and provided false evidence in at least two other judicial proceedings.

Targeted discovery should be permitted for two critical reasons. First, to allow Kuveyt Türk to develop evidence that ENEXD is not entitled to discovery in this case. Kuveyt Türk intends to develop further evidence in support of its opposition to discovery. Second, to investigate the fraud on this Court and how it occurred so that it may make an appropriate application to this Court (including for sanctions or a criminal referral). Indeed, as noted above, ENEXD's principals have a long history of lies and fraud.

At this juncture, the appropriate discovery can be targeted. Kuveyt Türk respectfully requests that the Court order two forms of discovery.

a. **Three Declarations**:[4] ENEXD (through its two principals Ms. Delaram Zavarei and Mr. Reza Mostafavi Tabatabaei) and its UK counsel (Mr.

---

[4] Courts routinely order declarations and other targeted discovery to investigate bad-faith conduct, such as fraud. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 218 F.R.D. 409, 414-15 (S.D.N.Y. 2003) (ordering depositions and production of paralegal records to investigate allegedly fraudulent affidavits); *see also* Order at 1-2, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (S.D.N.Y. Sept. 12, 2021), ECF No. 7011 (requiring four declarations confirming no improper sharing of deposition transcript to investigate an alleged protective-order violation); Order at 1-2, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570 (S.D.N.Y. Sept.

Wong) should explain the origins and history of both transaction documents in this case: Page 2 of Wong Exhibit 11 (ECF No. 3-12) and Page 5 of Wong Exhibit 12 (ECF No. 3-13).  As noted above, Kuveyt Türk submits that both documents are fraudulent and purport to show two financial transactions that never occurred.  And as also noted above, Mr. Wong's declaration omits any account of how those documents came into his possession or the chain of custody for them that could lay a foundation for this Court's reliance on them. Thus, this Court should order Ms. Zavarei, Mr. Tabatabaei, and Mr. Wong to submit to the Court declarations in the form provided by 28 U.S.C. § 1746 explaining (i) who created each of these two documents; (ii) what each of them understood about the two documents; (iii) from whom each of them received the two documents and under what circumstances; (iv) how the two documents were initially transmitted to each of them; and (v) the chain of custody of the two documents from creation until presentation to this Court, including the dates and method of each transmission in that chain.  The chain of custody information should include the name, nationality, physical address, phone number, and electronic messaging information (including email address or

21, 2021), ECF No. 7082 (ordering thirty-three supplemental declarations detailing third-party communications, deposition discussions, transcript access, firm investigation, and IT forensic analysis).

27

text messaging number or handle for services like WhatsApp) of each person in the chain of custody from creation until presentation to this Court.

b. **Correspondent Bank Confirmation**: As noted, the two documents at issue concern purported transactions at correspondent banks in New York:

(i) Page 2 of Wong Exhibit 11 concerns a transfer on February 14, 2023, for $5,705,441.82 that allegedly passed through Kuveyt Türk's account number 36063425 at Citibank N.A.  Kuveyt Türk's declarant (Yazıcı Decl.) has confirmed that transaction did not take place.  Citibank N.A. can check its records to confirm whether this transaction in Exhibit 11 occurred or not.

(ii) Page 5 of Wong Exhibit 12 concerns a transfer on May 8, 2023, for $5,580,944.21 that allegedly passed through Türk Finans's account number ending in 3214 at JPMorgan Chase.  As stated above, counsel has a good-faith basis to believe Wong Exhibit 12 is fabricated. JPMorgan Chase can check its records to confirm whether this transaction in Wong Exhibit 12 occurred or not.

## CONCLUSION

For the foregoing reasons, this Court should provide relief from the order authorizing the subpoenas and from the subpoenas issued pursuant to it.  As the

28

Court deliberates on this motion, it should also pause all discovery under the subpoenas. It should further order limited discovery to permit Kuveyt Türk to investigate ENEXD's misrepresentations.

Respectfully submitted,

Dated: November 6, 2025

/s/ *Steven T. Cottreau*

Steven T. Cottreau
Charlotte H. Taylor
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001
(202) 879-3939

Fahad A. Habib (*pro hac vice forthcoming*)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939

*Counsel for Kuveyt Türk Katılım Bankası A.Ş.*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this motion complies with the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 7.1(c). Excluding the parts of this motion exempted by the local rule, the motion contains 6,683 words and has been prepared using Microsoft Word in Times New Roman 14-point font.

/s/ *Steven T. Cottreau*
Steven T. Cottreau
*Counsel for Kuveyt Türk*
*Katılım Bankası A.Ş.*

30